IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RLI INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 20 C 5530 |
| | ) | |
| v. | ) | |
| | ) | Judge Jorge L. Alonso |
| ACUITY INSURANCE, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

In this diversity case,[1] two insurers—plaintiff, RLI Insurance Company ("RLI"), and defendant, Acuity[2]—dispute the appropriate method of apportioning a settlement against their mutual insured, following the insured's post-settlement target tender to RLI. The case is before the Court on the parties' cross-motions for summary judgment. For the following reasons, the Court grants Acuity's motion and denies RLI's.

**I.    Background**

For purposes of the present cross-motions for summary judgment, the parties have stipulated to the material facts (ECF No. 29), which are as follows.  On January 18, 2020, George Daker of the Daker Corporation, a concrete contracting business, was involved in an automobile accident. The accident resulted in the death of Riccardo Sweetney II. Mr. Sweetney's estate brought a lawsuit against Mr. Daker.

---

[1] RLI is an Illinois corporation with its principal place of business in Illinois. Acuity is a Wisconsin corporation with its principal place of business in Wisconsin. Therefore, RLI is a citizen of Illinois, and Acuity is a citizen of Wisconsin, so this Court has diversity jurisdiction under 28 U.S.C. § 1332(a).

[2] Acuity asserts that it is "incorrectly sued as Acuity Insurance" (Def.'s Combined Mem. at 1, ECF No. 33), and its full name is simply "Acuity."

Acuity had issued to the Daker Corporation a primary business automobile insurance policy, effective from January 1, 2020, to January 1, 2021, with a limit of $1,000,000 per accident. For the same period, Acuity had issued the Daker Corporation a commercial excess liability policy, which had a limit of $8,000,000 per occurrence. Mr. Daker qualifies as an insured under both of these Acuity policies with respect to the January 18, 2020 accident. Meanwhile, RLI had issued to George and Gia C. Daker a personal umbrella liability policy, effective from April 29, 2019, to April 28, 2020, with a limit of $1,000,000 per occurrence. This policy required the maintenance of certain underlying primary insurance, including an automobile liability insurance policy. On September 18, 2020, RLI brought this action against Acuity, seeking a declaration of the parties' rights and obligations under their respective policies and asserting that RLI and Acuity must share any loss exceeding the limit of the Acuity primary policy on a pro-rata-by-limits basis.

On October 21, 2020, in preparation for a mediation in the underlying Daker case, RLI and Acuity agreed to an "interim funding arrangement." (Stipulated Facts Ex. 1 at 2, October 20, 2020 Email from Atty Schenk to Atty Postel, ECF No. 29-1.) Their agreement provided that Acuity would have "ultimate control over the negotiations during the mediation," although RLI's counsel and adjuster would be permitted to participate by "sharing their views and recommendations." (*Id.*) If the case settled for an amount greater than the $1,000,000 limit of the Acuity primary policy, the parties agreed that RLI would contribute 32.25% of the excess, and Acuity would contribute the remaining 68.75%. However, the parties agreed to these contributions "under a reservation of rights as to the appropriate apportionment and subject to reapportionment through the pending [declaratory judgment] action." (*Id.*) Further, the parties agreed that, if the mediation was unsuccessful, then they were "not bound to continue with [the] interim contribution arrangement in future settlement negotiations, but may do so upon written confirmation of both parties." (*Id.*)

On October 23, 2020, the underlying case settled at mediation for $2,650,000. George Daker sent an email to RLI on November 16, 2020, in which he stated that he wanted to exhaust the RLI policy prior to the Acuity excess policy.

On November 23, 2020, Acuity answered RLI's complaint in this action and counterclaimed, seeking a declaration that (1) based on George Daker's November 16, 2020 email and the target-tender doctrine, RLI was required to exhaust its policy before Acuity's excess policy was triggered, and (2) in the alternative, Acuity and RLI should equally share the amount of the loss in excess of $1,000,000. These cross-motions for summary judgment followed.

## II.  Standard on Cross-Motions for Summary Judgment

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Brummett v. Sinclair Broadcast Group, Inc.*, 414 F.3d 686, 692 (7th Cir. 2005). When considering a motion for summary judgment, the Court must construe the evidence and make all reasonable inferences in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The Court may not weigh conflicting evidence or make credibility determinations, but the party opposing summary judgment must point to competent evidence that would be admissible at trial to demonstrate a genuine dispute of material fact. *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 705 (7th Cir. 2011); *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). The court will enter summary judgment against a party who does not "come forward with evidence that would reasonably permit the finder of fact to find in [its] favor on a material question." *Modrowski v. Pigatto*, 712 F.3d 1166, 1167 (7th Cir. 2013). The Court applies these "ordinary standards for summary judgment"

in the same way whether one or both parties move for summary judgment; when the parties file cross-motions, the Court treats each motion individually, "constru[ing] all facts and inferences arising from them in favor of the party against whom the motion under consideration is made." *Blow v. Bijora, Inc.*, 855 F.3d 793, 797 (7th Cir. 2017); *see Reeder v. Carter*, 339 F. Supp. 3d 860, 869-70 (S.D. Ind. 2018).

### III. Discussion

In their briefs, the parties focus on two main issues: (1) whether Mr. Daker made an effective selective tender or "target tender" to RLI, and, if not, (2) whether the Court should apportion the amount of the loss exceeding the $1,000,000 limit of the Acuity primary policy in equal shares or pro rata by limits. The Court need not reach the second issue because it concludes that Mr. Daker selectively tendered the settlement to RLI, so RLI must exhaust its policy limits before Acuity's excess policy is triggered.

"Ordinarily, where an insured has concurrent coverage for the same liability, both of its insurers are obligated to provide coverage under the terms of their respective policies and their coverage obligations are then coordinated, typically by reference to the policies' 'other insurance' provisions." *Chicago Hosp. Risk Pooling Program v. Illinois State Med. Inter-Ins. Exch.*, 758 N.E.2d 353, 357 (Ill. App. Ct. 2001) ("*CHRPP I*"). A co-insurer that pays "greater than its share of the loss" has a right in equitable contribution to be "reimbursed" by any insurers who concurrently "insure the same entities, the same interests, and the same risks." *Home Ins. Co. v. Cincinnati Ins. Co.*, 821 N.E.2d 269, 276 (Ill. 2004); *see Inst. of London Underwriters v. Hartford Fire Ins. Co.*, 599 N.E.2d 1311, 1313 (Ill. App. Ct. 1992) *overruled on other grounds by Cincinnati Cos. v. W. Am. Ins. Co.*, 701 N.E.2d 499, 504-05 (1998); *Royal Globe Ins. Co. v. Aetna Ins. Co.*, 403 N.E.2d 680, 682 (Ill. App. Ct. 1980). In such circumstances, there are various methods for

equitably apportioning the loss among the co-insurers, including the equal shares method and the pro-rata-by-limits method. *See* Scott M. Seaman & Jason R. Schulze, *Allocation of Losses in Complex Insurance Coverage Claims*, App. A, 50 State Survey of Allocation Decisions (surveying decisions applying various allocation methodologies).

The parties agree that their dispute is governed by Illinois law, and Illinois is one of a small minority of jurisdictions that "allows a policyholder to tender its [claim] to one of its [co-]insurers, but not another, and thereby nullify [the selected] insurer's rights of equitable contribution (as to both defense and indemnity) against the non-participating insurer." *Id.* § 16:8 (citing, *inter alia*, *John Burns Const. Co. v. Indiana Ins. Co.*, 727 N.E.2d 211, 217 (Ill. 2000)). This "selective tender" or "target tender" rule, as it is known, "provides an insured covered by multiple concurrent policies with the paramount right to choose which insurer will defend and indemnify it with respect to a specific claim." *Chicago Hosp. Risk Pooling Program v. Illinois State Med. Inter-Ins. Exch.*, 925 N.E.2d 1216, 1233 (Ill. App. Ct. 2010) ("*CHRPP II*"). "The insured's right to choose also encompasses the right to deactivate coverage with an insurer previously selected for purposes of invoking exclusive coverage with another insurer." *Id.* (citing *Alcan United, Inc. v. W. Bend Mut. Ins. Co.*, 707 N.E.2d 687, 695 (Ill. App. Ct. 1999)); *see Kajima Const. Servs., Inc. v. St. Paul Fire & Marine Ins. Co.*, 879 N.E.2d 305, 311 (Ill. 2007) (citing *Alcan* with approval). Although the doctrine developed in the context of co-primary insurers, the insured has the same rights with regard to its concurrent excess insurers. *N. River Ins. Co. v. Grinnell Mut. Reinsurance Co.*, 860 N.E.2d 460, 470 (Ill. App. Ct. 2006) ("[W]e hold that once an insured has exhausted its concurrent primary insurance coverage, it may selectively tender its indemnity to concurrent excess insurers.").

These rights are often very valuable to insureds, who may wish to target or deactivate one insurer in favor of another "for various reasons, including fear of increased premiums or cancellation of the policy in the future." *CHRPP II*, 925 N.E.2d at 1233 (citing *Cincinnati Cos.*, 701 N.E.2d at 503); *see Inst. of London*, 599 N.E.2d at 1316. "When an insured has knowingly chosen to forego one insurer's assistance by instructing that insurer not to involve itself in the litigation, the targeted insurer then has the sole responsibility to defend and indemnify the insured up to the limits of its liability and is thereby foreclosed from seeking equitable contribution from the other insurer that was not designated by the insured." *CHRPP II*, 925 N.E.2d at 1233.

RLI argues that the November 16, 2020 email from Mr. Daker to RLI was not a valid target tender for two main reasons. First, citing *Pekin Insurance Co. v. Fidelity & Guaranty Insurance Co.*, 830 N.E.2d 10, 19 (Ill. App. Ct. 2005), RLI argues that the target-tender doctrine does not apply to automobile insurance. Second, RLI argues that, even putting *Pekin Insurance* aside, Mr. Daker waived any right to make a target tender by waiting until after his insurers had already settled his case on his behalf. Neither argument is persuasive.

**A. This Case Is Not Beyond the Scope of the Target-Tender Rule**

The only case RLI cites in favor of its position that the target=tender rule does not apply in the context of auto accidents is *Pekin Insurance,* 830 N.E.2d at 19. The Illinois Appellate Court ruled in that case that a towing business seeking coverage for an auto accident could not deselect its own primary insurance and target the towed vehicle's insurer, and the decision states that "the 'targeted-tender' doctrine has thus far been limited primarily to the context of construction contracts." *Id.*

However, the court did not announce any rule prohibiting the extension of the target-tender doctrine to auto insurance, and, in relying on the above-quoted phrase, RLI does not accurately

represent either the reasoning or the holding of the case. The court reasoned that the towing business could not deselect its own insurance because an Illinois statute, 625 ILCS 5/12-606(d), mandated that all tow truck operators must obtain automobile liability insurance coverage, and it would frustrate the purpose of the statute to "allow the owner of a policy mandated" by that statute to "deselect that coverage in favor of the coverage of the vehicle it tows." *Pekin Ins.*, 830 N.E.2d at 19. Regarding the statement that "the 'targeted-tender' doctrine has thus far been limited primarily to the context of construction contracts," the full quotation is as follows: "the 'targeted-tender' doctrine has thus far been limited primarily to the context of construction contracts *involving a named additional insured*." *Id.* (emphasis added). The portion the Court has emphasized above, which RLI omits and ignores, makes a material difference. In *Pekin Insurance,* the towing business cited *John Burns*, 727 N.E.2d at 215, in support of its argument that it had a right to choose which of two concurrent insurers would be required to defend and indemnify it, but the Illinois Appellate Court distinguished *John Burns* because the insured construction contractor there was "named on both policies." *Pekin Insurance*, 830 N.E.2d at 19. In *Pekin Insurance*, by contrast, the towing business was insured by the towed vehicle's policy only under its omnibus clause, *id.*, which insured "anyone . . . using with . . . permission a covered auto," *id.* at 15. In these respects, this case is not like *Pekin Insurance*: no statutory mandate comes into play, and the RLI policy was issued to Mr. Daker in his own name. *Pekin Insurance* does not prohibit Mr. Daker from making a target tender in this case.

RLI does not cite, and the Court has not found, any other authority cabining the target-tender rule to the construction context. Indeed, the authority seems to be to the contrary. *See CHRPP II*, 925 N.E.2d at 1233-34 (applying target-tender doctrine in the context of professional liability insurance); *see also Federated Mut. Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 668 N.E.2d

7

627, 633–34 (Ill. App. Ct. 1996) (implying that target-tender rule applies in auto accident context by analyzing whether insured in auto accident had manifested an affirmative choice between two co-insurers, but finding none); *Com. Underwriters v. Utica Mut. Ins. Co.*, No. 98 C 5484, 2002 WL 31357047, at *7-8 (N.D. Ill. Oct. 18, 2002) (implying that target-tender rule applied to automobile coverage, but concluding that there was a triable factual dispute as to whether the insured had manifested an affirmative choice to forgo coverage under the applicable automobile policy). The Illinois Supreme Court has addressed the target-tender rule in broad terms, *Kajima*, 879 N.E.2d at 309-12, *John Burns*, 727 N.E.2d at 215-17, and on numerous occasions the Illinois Appellate Court has referred to an insured's right to target or knowingly forgo a particular insurer's coverage as "paramount." *See, e.g.*, *CHRPP II*, 925 N.E.2d at 1233; *Legion Ins. Co. v. Empire Fire & Marine Ins. Co.*, 822 N.E.2d 1, 4 (Ill. App. Ct. 2004)); *Alcan*, 707 N.E.2d at 693. In the absence of any cited authority that limits the rule, the Court presumes that it applies generally, except in limited circumstances such as those in *Pekin Insurance*, which are not present here.

### B. The Settlement Did Not Extinguish Mr. Daker's Target-Tender Rights

In support of its argument that Mr. Daker could not make a valid target tender after his insurers had already settled his case, RLI cites two decisions, *Richard Marker Associates v. Pekin Insurance Co.*, 743 N.E.2d 1078, 1083 (Ill. App. Ct. 2001), and *AMCO Insurance Co. v. Cincinnati Insurance Co.*, 10 N.E.3d 374, 381 (Ill. App. Ct. 2014). As above, the authority he has cited provides no support for his position; if anything, these cases tend to undermine it.

In *Richard Marker*, the insured tendered his claim to two separate insurers, settled the case himself before either insurer took up his defense, and then withdrew his tender to one of the insurers to deactivate that insurer's coverage. 743 N.E.2d at 1079. The insurer argued that the insured's attempt to withdraw his tender was "of no legal consequence where he had settled the

8

underlying lawsuit prior to the withdrawal." *Id.* at 1080. After reviewing the applicable case law, including *John Burns* and *Alcan*, the Illinois Appellate Court rejected the argument, concluding that it could not "be said under the above principles that [the insured's] right to forgo [a previously selected insurer's] coverage was relinquished simply because the [underlying] lawsuit was settled." *Id.* at 1083. The court stated simply that because the insured had ultimately "chose[n] to forgo [one insurer's] assistance, . . . [the other was] not entitled to contribution." *Id.* Thus, under *Richard Marker*, an insured's target-tender rights survive the settlement of his underlying claim, irrespective of the fact that some "prejudice inescapably results" to the targeted insurer vis-à-vis other insurers. *Id.* at 1083.

RLI argues that, although the court recognized in *Richard Marker* that the post-settlement target tender was valid, the decision implicitly supports RLI's position here because RLI participated in settling Mr. Daker's case, whereas the selected insurer in *Richard Marker* had denied coverage and did not participate in his defense. But this distinction makes no difference. The decision in *Richard Marker* did not turn on the selected insurer's denial of coverage or failure to participate in the settlement. It is true that the Illinois Appellate Court mentioned the fact that the insured was forced to settle the case himself because his insurer had denied coverage, but that was in rejecting the contention that the insured had somehow "manipulated" the circumstances by settling the case himself. *Id.* The Illinois Appellate Court did not say whether it would have been "manipulative" to deselect an insurer who had not denied coverage, nor is it implicit in any of the court's reasoning. This portion of *Richard Marker* mentioning "manipulation" simply has no bearing on this case.

Even if *Richard Marker* may have left open the possibility that an insured might lose his target-tender rights if his conduct was so "manipulative" as to cause undue prejudice to his insurer

9

under the circumstances, it did not find any such exceptional circumstances there, and the Court does not see any basis for finding them here, either. Indeed, RLI admits that it advised Mr. Daker of his right to target tender his claim to Acuity's excess policy, so it can hardly complain of Mr. Daker's choosing to exercise that right merely because he ended up targeting RLI's own coverage. RLI replies that its discussions with Mr. Daker about targeting Acuity's coverage all took place before the case settled, but the Court fails to see why that timing makes any difference. The target tender came only a few weeks after the mediation, while the methodology for allocating the settlement between the two insurers was still unsettled, so there was no undue prejudice. RLI has merely been asked to act in accord with the "responsibilities attendant to its duty" to Mr. Daker under the policy, which it possesses "irrespective of the existence of other [excess] insurance." *Id.*; *see also id.* at 1081 ("The insured may choose to forgo an insurer's assistance for various reasons, such as the insured's fear that premiums would be increased or the policy canceled in the future, *and this ability to forgo assistance should be protected*.") (emphasis added).

RLI argues, however, that the Illinois Appellate Court's decision in *AMCO* shows that RLI's interpretation of *Richard Marker* is correct and "the rule of *Richard Marker* is limited." (Pl.'s Combined Resp. & Reply Br. at 8, ECF No. 34.) According to RLI, the *AMCO* decision explained that *Richard Marker* recognized only "an insured's right to deselect an insurer following **a settlement that the insured paid for himself**." (*Id.* (emphasis added by RLI).) But the Court agrees with Acuity that this (quite literally) puts the emphasis in the wrong place. In *AMCO*, a targeted insurer and two insured contractors reached a settlement with the plaintiff in the underlying lawsuit against the contractors. As part of the settlement agreement, the insured contractors assigned any and all rights under two other applicable insurance policies to the targeted insurer. *AMCO*, 10 N.E.3d at 377. The targeted insurer filed suit against the other two insurers,

10

arguing that the insured contractors' assignment of rights included their target-tender rights, *i.e.*, their right to deselect one insurer and select another. *Id.* at 377, 379. According to the targeted insurer, because it had been assigned those rights, it could deselect itself and target other insurers. *Id.* at 379. The Illinois Appellate Court rejected this argument, explaining that the target-tender doctrine did not allow insurers "to deselect themselves as targeted insurers following the settlement of the insured's underlying lawsuit." *Id.* at 382. This was because "the point of the doctrine is to allow the insured to select which insurer it wants to target," and if the insurer could "simply settle the underlying lawsuit contingent on the assignment of the insured's rights, and then seek contribution from every other insurer," then the "entire purpose of the targeted tender doctrine would be eviscerated." *Id.* The court reasoned that "[e]ven [the targeted insurer's] most beneficial case, *Richard Marker*, only allowed the targeted tender doctrine to be applied to an *insured's* right to deselect an insurer following a settlement that the insured paid for himself." *Id.* (emphasis in original). Thus, in the quotation RLI relies on, the *AMCO* court was emphasizing, in accord with the main thrust of its decision, that the right to deselect coverage belongs to the insured, not the insurer.

While it is also true that one of the defendant insurers in *AMCO* argued that "there is no reason for an insured to continue to be able to target and deselect insurers once the underlying case is completely resolved by a targeted insurer," 10 N.E.3d at 381, the Illinois Appellate Court did not resolve the case on this basis. It stated, "Despite the parties' multiple arguments, the outcome of this case is determined by the resolution of one main issue: whether the targeted tender doctrine *allows insurers to deselect themselves* as targeted insurers following the settlement of the insured's underlying lawsuit." *Id.* at 382 (emphasis added). In answering that question in the negative, the court reasoned that insurers cannot deselect themselves because the point of the doctrine is to

11

empower the insured to make the selection it desires. The decision turned on the identity of the party making the selective tender, not whether the selection precedes or follows the settlement.

Thus, the Court finds no support in *Richard Marker* or *AMCO* for RLI's argument that Mr. Daker could not validly target RLI's policy after the case against him had already settled; in fact, both cases tend to the contrary. Under *Richard Marker*, an insured's target-tender rights may survive the settlement of his underlying claim, and both cases emphasized the centrality of the insured's "paramount" right to select one insurer's coverage over another's, even if the selection is "prejudicial" to the insurer in some sense. *Richard Marker*, 743 N.E.2d at 1081, 1083; *see AMCO*, 10 N.E.3d at 382. Even if these cases do not foreclose the possibility that there might be some exceptional circumstances in which fairness dictates setting aside a target tender that would cause undue prejudice, the Court discerns no undue prejudice caused by Mr. Daker's post-settlement tender, which came shortly after the mediation, while the allocation of the settlement between the two insurers remained in flux. In any case, RLI has not provided any firm basis in Illinois law for ruling that such a post-settlement target tender is unduly prejudicial, and it is not the position of a federal district court to extend state law. *Est. of O'Bryan v. Town of Sellersburg*, No. NA02-238-CHH, 2003 WL 21852320, at *4 (S.D. Ind. July 2, 2003) (Hamilton, J.) (declining to make ruling that would "work a dramatic change in [state] law" because, "[i]f such a step is to be taken, it will need to be taken by the [state] courts, not by a federal court whose duty is to apply existing [state] law").

An insurer's liability for a covered claim is only a consequence of "the insurance contract, for which the insurer receives consideration." *Richard Marker*, 743 N.E.2d at 1083 (citing *Cincinnati Cos.*, 701 N.E.2d at 504). When an insured makes a selective tender, the insurer cannot complain about having to shoulder the "responsibilit[y]" to indemnify the policyholder that it

accepted when it entered into the insurance contract, to the extent it did so "irrespective of the existence of other insurance." 743 N.E.2d at 1083. RLI has not shown that Mr. Daker has done anything more than exercise his rights as a policyholder under Illinois law, or that RLI had to do any more than its policy obligated it to do in response to Mr. Daker's claim. Under these circumstances, the Court concludes that Mr. Daker's target tender to RLI was valid. Therefore, following exhaustion of the Acuity primary policy, RLI must exhaust its policy limits before Acuity's excess policy is required to contribute to the settlement.

## IV. Conclusion

For the reasons set forth above, the Court denies plaintiff's motion [30] for summary judgment and grants defendant's motion [32] for summary judgment. The Court declares that, following exhaustion of the Acuity primary policy's $1,000,000 limit in payment of the settlement of Mr. George Daker's underlying lawsuit, RLI, as the targeted excess insurer, must exhaust its $1,000,000 policy limit before Acuity's excess policy is required to pay. Civil case terminated.

**SO ORDERED.**                                                                              **ENTERED: January 4, 2022**

**HON. JORGE ALONSO**
**United States District Judge**